United States Court of Appeals
FOR THE EIGHTH CIRCUIT

_____

Nos. 97-1950 and 97-2330
_____

Viacom Incorporated; Blockbuster    *
Entertainment, Inc.,    *
   *
     Plaintiffs - Appellees/    *
     Cross Appellants,    *
   *   Appeals from the United States
     v.    *   District Court for the
   *   Western District of Missouri.
Ingram Enterprises, Inc.; Blockbuster    *
Fireworks, Inc.; Fireworks Supermarkets *
of America, Inc.; Blockbuster Fireworks    *
of California, Inc.,    *
   *
     Defendants - Appellants/    *
     Cross Appellees.    *

_____

Submitted: December 8, 1997
Filed: April 14, 1998
_____

Before BOWMAN, LOKEN, and HANSEN, Circuit Judges.
_____

LOKEN, Circuit Judge.

Viacom Inc. and Blockbuster Entertainment, Inc. ("Viacom"), own many federally registered trademarks centered around the marks BLOCKBUSTER and BLOCKBUSTER VIDEO. The first mark was registered in 1986, and some are now

incontestable under 15 U.S.C. § 1065. Viacom owns or franchises 4,500 Blockbuster Video and 500 Blockbuster Music stores. The BLOCKBUSTER marks are heavily advertised and promoted and are used on a wide variety of consumer products and services. Ingram Enterprises, Inc., and three of its affiliates ("Ingram") own and operate fireworks stands in Missouri and California. Ingram owns a BLOCKBUSTER mark that was federally registered for fireworks sales in 1992, and a BLOCKBUSTER FIREWORKS mark for which a federal registration application is pending.

Viacom commenced this action in May 1994, asserting a variety of federal and state law claims for trademark infringement and dilution. After discovery, both sides moved for summary judgment. In a series of orders, the district court denied Viacom summary judgment on its claims of trademark infringement because the evidence of likelihood of confusion was not conclusive; granted Viacom summary judgment on its claim under Missouri's anti-dilution statute, Mo. Rev. Stat. § 417.061(1), and enjoined Ingram from further use of BLOCKBUSTER marks in Missouri; dismissed Viacom's claim under the Federal Trademark Dilution Act of 1995, 15 U.S.C. § 1125(c) ("FTDA"), because the relief sought would render the statute impermissibly retroactive; and denied all remaining claims for summary judgment. Ingram appealed the grant of summary judgment and an injunction under Missouri anti-dilution law. After the court entered final judgment dismissing the FTDA claim, see Fed. R. Civ. P. 54(b), Viacom cross-appealed that dismissal. Reviewing these summary judgment issues *de novo*, we conclude the district court erred in declining to apply the FTDA, an error which requires us to reverse both the grant of summary judgment on Viacom's state law anti-dilution claim, and the dismissal of Viacom's FTDA claim for prospective relief. Accordingly, we convert the district court's permanent injunction into a preliminary injunction, reverse in part, and remand.

# I.

For reasons that will become apparent, it is essential to address first the FTDA's impact on a lawsuit commenced before enactment that seeks relief against on-going conduct. The FTDA protects a "famous" trademark from subsequent uses that tarnish or disparage or blur the distinctiveness of the mark, regardless of the likelihood of customer confusion. The Act creates a remedy against non-competing trademark uses such as "DuPont shoes, Buick aspirin, and Kodak pianos." 141 CONG. REC. H14317 (daily ed. Dec. 12, 1995) (statement of Rep. Moorhead). The FTDA entitles the owner of a famous mark to a nationwide injunction if another person's subsequent commercial use of a mark "causes dilution of the distinctive quality of the [famous] mark," 15 U.S.C. § 1125(c)(1),[1] and to damages for willful dilution, 15 U.S.C. § 1125 (c)(2). However, the FTDA also provides a complete defense to state law dilution claims to owners of valid, federally registered marks, 15 U.S.C. § 1125(c)(3). We must decide whether injunctive relief authorized by § 1125(c)(1) may be granted against on-going dilution that began before the FTDA's enactment in January 1996, and whether § 1125(c)(3) applies to Viacom's pre-enactment state law anti-dilution claim against Ingram's registered mark.

**A. Viacom's Claim for Injunctive Relief under § 1125(c)(1).** In Landgraf v. USI Film Products, 511 U.S. 244, 278 (1994), the Supreme Court revived the "traditional presumption against applying statutes affecting substantive rights, liabilities, or duties to conduct arising before their enactment," absent an express statutory command to the contrary. However, the Court also noted that

---

[1]§ 1125(c)(1) provides in relevant part: "(1) The owner of a famous mark shall be entitled, subject to the principles of equity and upon such terms as the court deems reasonable, to an injunction against another person's commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark . . . ."

application of new statutes passed after the events in suit is unquestionably proper in many situations. [For example, w]hen the intervening statute authorizes or affects the propriety of prospective relief, application of the new provision is not retroactive.

511 U.S. at 273. The FTDA contains no express language addressing retroactivity. Therefore, Ingram argues that Viacom's claims for FTDA relief are barred by the traditional presumption against retroactivity. Viacom responds that it is entitled to prospective FTDA relief against continuing dilution of its BLOCKBUSTER marks.[2]

In dismissing Viacom's claim for prospective FTDA relief, the district court relied on Circuit City Stores, Inc. v. OfficeMax, Inc., 949 F. Supp. 409 (E.D. Va. 1996). The court in Circuit City described the above-quoted language in Landgraf as dicta and held that prospective FTDA relief would have an impermissible retroactive effect. Because the diluter's conduct did not violate federal law when initiated, it would be "manifestly inequitable" to compel the diluter to surrender good will associated with its competing mark. 949 F. Supp. at 419.[3] We disagree.

In the first place, we will not brush aside as dicta the Supreme Court's pronouncement that an intervening statute may "authorize[] . . . prospective relief"

---

[2]Count VIII of Viacom's Second Amended Complaint also sought the recovery of willful dilution damages under § 1125(c)(2). However, though Viacom cross appealed the dismissal of Count VIII, it argues on appeal only that Landgraf does not foreclose its claim for prospective relief under § (c)(1). Therefore, the dismissal of paragraphs 74 and 76 of the Second Amended Complaint is unchallenged, and Viacom is barred from seeking § (c)(2) monetary relief on remand.

[3]Accord S Indus., Inc. v. Diamond Multimedia Sys., Inc., 1998 WL 21661, *8-9 (N.D. Ill. 1998); Resorts of Pinehurst, Inc. v. Pinehurst Nat'l Dev. Corp., 973 F. Supp. 552, 555-59 (M.D.N.C. 1997). Contra Fuente Cigar, Ltd. v. Opus One, 985 F. Supp. 1448, 1451-53 (M.D. Fla. 1997).

without running afoul of the traditional presumption against retroactivity. That pronouncement was expanded upon in Justice Scalia's concurring opinion for three Justices. See 511 U.S. at 293 & n.3. As we read Landgraf, the pronouncement is not "dicta." It is part of a carefully crafted holding on retroactivity that is binding on this court.

Second, the court in Circuit City analyzed cases cited in Landgraf and concluded that the prospective relief pronouncement only applies when the conduct to be enjoined was illegal prior to the new statute's enactment. However, other Supreme Court cases make it clear that the pronouncement has a broader sweep. For example, in upholding a Sherman Act injunction, the Court many years ago stated:

> It is said that to grant the injunction prayed for in this case is to give the statute a retroactive effect; that the contract, at the time it was entered into, was not prohibited or declared illegal by the statute, as it had not then been passed, and to now enjoin the doing of an act which was legal at the time it was done would be improper. We give to the law no retroactive effect. The agreement in question is a continuing one. . . . Assuming such action to have been legal at the time the agreement was first entered into, the continuation of the agreement, after it has been declared to be illegal, becomes a violation of the act.

United States v. Trans-Missouri Freight Ass'n, 166 U.S. 290, 342 (1897); to the same effect, see Waters-Pierce Oil Co. v. State of Texas, 212 U.S. 86, 107-08 (1909); Chicago & Alton R.R. v. Tranbarger, 238 U.S. 67, 73 (1915).[4] Here, the conduct

---

[4]As a noted jurisprudential scholar explained, "If every time a man relied on existing law in arranging his affairs, he were made secure against any change in legal rules, the whole body of our law would be ossified forever." L. Fuller, The Morality of Law 60 (1964), quoted in Landgraf, 511 U.S. at 269 n.24. For a dramatic example of prospective relief that upset settled expectations, see DIRECTV, Inc. v. FCC, 110 F.3d 816, 825-26 (D.C. Cir. 1997)

sought to be enjoined under the FTDA is Ingram's continuing use of its BLOCKBUSTER marks, not its pre-enactment conduct.

Third, Ingram argues that applying the FTDA would unfairly deprive it of the investment in its BLOCKBUSTER marks. We agree that fairness is important in considering retroactivity issues. There is also a difference between applying a new trademark infringement statute to enjoin conduct causing public confusion, and applying a new anti-dilution statute to enhance Viacom's private property rights at the expense of Ingram's pre-existing property rights.[5] However, the answer to this very real issue is not to abandon the general rule that new statutes may be enforced prospectively. Section § 1125(c)(1) expressly provides that its injunctive relief is "subject to the discretion of the court and the principles of equity." If Ingram's non-competing, non-confusing use of its BLOCKBUSTER mark prior to the FTDA's enactment was lawful and resulted in Ingram acquiring a valuable and legitimate property interest of its own, Viacom will presumably not be entitled to an anti-dilution injunction granting it a nationwide monopoly in the use of this rather common word.[6]

For the foregoing reasons, we conclude that the district court erred in dismissing the part of Count VIII that seeks prospective relief under § 1125(c)(1).

---

[5]As the Court observed in Landgraf, "The largest category of cases in which we have applied the presumption against statutory retroactivity has involved new provisions affecting contractual or property rights, matters in which predictability and stability are of prime importance." 511 U.S. at 271.

[6]To warrant injunctive relief under § 1125(c)(1), Viacom must prove its mark was "famous" at the time Ingram began using the diluting mark. "By definition, all 'trademarks' are 'distinctive' -- very few are 'famous.'" 3 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 24:91, at 24-149 (4th ed. 1997).

-6-

**B. Ingram's Defense Based upon § 1125(c)(3).** Section 1125(c)(3) provides that ownership of a "valid federal registration . . . shall be a complete bar to an action against that person, with respect to that mark, that is brought by another person under the common law or a statute of a State and that seeks to prevent dilution of the distinctiveness of a mark." We must separately consider the retroactive effect of this provision. See Maitland v. University of Minnesota, 43 F.3d 357, 361 (8th Cir. 1994).

Viacom seeks (and has been granted) an injunction under the Missouri anti-dilution statute, Mo. Rev. Stat. § 417.061(1). Because "relief by injunction operates *in futuro*" and gives Viacom "no 'vested right' in the decree entered by the trial court," there is no retroactivity bar to applying a new, more restrictive statute on appeal. Landgraf, 511 U.S. at 273-74. Indeed, even if an injunction has matured into a final judgment, "when Congress alters the substantive law on which an injunction is based, the injunction may be enforced only insofar as it conforms to the changed law." Gavin v. Branstad, 122 F.3d 1081, 1086 (8th Cir. 1997). Thus, the district court erred in concluding that § 1125(c)(3) "is inapplicable" to this case. Because Ingram was granted federal registration of its BLOCKBUSTER mark in 1992, the court must reconsider its grant of summary judgment and a permanent injunction based on the Missouri anti-dilution statute in light of § 1125(c)(3).

## II.

This is an interlocutory appeal, so the case must of course be remanded. On remand, there will presumably be a trial of the main event -- Viacom's claims of trademark infringement -- as well as the subsidiary claims of dilution under FTDA and Missouri law.[7] We have not considered the district court's lengthy discussion of

_____

[7]The district court observed there is a paucity of dilution law and a wealth of trademark infringement law. This is logical. Trademark infringement relief protects the public from confusion by enforcing the rights of a prior mark, whereas dilution relief, being premised on the absence of confusion, merely protects the property rights

trademark infringement issues in denying Viacom summary judgment on those claims. Thus, there is no appellate law of the case as to those issues. Like any summary judgment ruling, the district court is free to reconsider its initial conclusions on the basis of a fully developed trial record.

There are two aspects of the case that deserve further comment. First, Viacom's claim under the Missouri anti-dilution act is not foreclosed or superseded by the FTDA, because Viacom may fail to prove its claim for injunctive relief under § 1125(c)(1), and Ingram may fail to prove that it is entitled to the § 1125(c)(3) defense against this state law claim.[8] Ingram argues the Lanham Act completely preempts state anti-dilution laws such as § 417.061. We implicitly rejected this contention in Anheuser-Busch, Inc. v. Balducci Publications, 28 F.3d 769, 777-78 (8th Cir. 1994), cert. denied, 513 U.S. 1112 (1995), and it has been explicitly rejected by at least three circuits. See Nikon Inc. v. Ikon Corp., 987 F.2d 91, 96 (2d Cir. 1993); Ringling Bros.-Barnum & Bailey Combined Shows, Inc. v. Celozzi-Ettelson Chevrolet, Inc., 855 F.2d 480, 483 (7th Cir. 1988); Golden Door, Inc. v. Odisho, 646 F.2d 347, 351-52 (9th Cir. 1980). Those decisions are consistent with Supreme Court decisions declining to preempt state legislation in the areas of copyright, see Goldstein v. California, 412 U.S. 546 (1973), and trade secrets, see Kewanee Oil Co. v. Bicron Corp., 416 U.S. 470 (1974). In addition, we note that Congress in § 1125(c)(3) of the FTDA made federal trademark

_____

of the prior mark's owner. As one treatise commented, "When trademark law leaves the firm and traditional ground of protecting customers from confusion and seeks protection for the trademark 'property' itself, a strong rationale is necessary." 3 MCCARTHY at § 24:70, p. 24-119.

[8]Although § 1125(c)(3) provides a "complete bar" to state law dilution claims, Viacom could block this defense, for example, by establishing that Ingram does not own a "valid registration."

-8-

registration a defense to claims under state anti-dilution statutes, rather than preempting such statutes altogether.

Ingram next argues that the district court erred in granting summary judgment because Viacom failed to establish as a matter of law the "likelihood . . . of dilution" that must be proved to warrant injunctive relief under § 417.061(1). The district court concluded that Viacom has shown a likelihood of dilution by blurring. As this concept was explained in an early landmark article on dilution:

> If "Kodak" may be used for bath tubs and cakes, "Mazda" for cameras and shoes, or "Ritz-Carlton" for coffee, these marks must inevitably be lost in the commonplace words of the language, despite the originality and ingenuity in their contrivance, and the vast expenditures in advertising them which the courts concede should be protected to the same extent as plant and machinery. . . . [An] entirely arbitrary symbol would soon lose its arresting uniqueness and hence its selling power if it could also be used on pianos, shaving cream, and fountain pens.

Frank L. Schechter, The Rational Basis of Trademark Protection, 40 Harv. L. Rev. 813, 830 (1927).[9]

The trademarks mentioned in the Schechter article are arbitrary or fanciful words, long associated in the public's eye with a particular company. Likewise, courts almost without exception have limited dilution-by-blurring relief to the owners of "strong" marks. "Without such a requirement, an anti-dilution statute becomes a rogue law that turns every trademark, no matter how weak, into an anti-competitive weapon."

---

[9]To put the difference between infringement and dilution more concretely, if a parent says to the kids, "Let's go pick something out at Blockbuster tonight," and the youngest child assumes they will be buying fireworks made by Viacom, that is evidence of the confusion that is essential to a claim of trademark infringement. But if the oldest child answers, "Which Blockbuster," that evidences dilution by blurring.

3 McCarthy at § 24:108, pp. 24-195-96. In Cushman v. Mutton Hollow Land Dev., Inc., 782 S.W.2d 150, 162 (Mo. App. 1990), one of the few state court decisions applying § 417.061, the court upheld the grant of relief because the plaintiff's strong mark had acquired secondary meaning. Accord Mead Data Central, Inc. v. Toyota Motor Sales, U.S.A., Inc., 875 F.2d 1026, 1030-31 (2d Cir. 1989).

In this case, the district court concluded that Viacom need not show secondary meaning for its trademark infringement claim because the BLOCKBUSTER mark is suggestive and therefore "deemed a strong mark" for Lanham Act purposes. The court then applied this analysis to the Missouri anti-dilution claim, without discussing Missouri authorities. It was error to conclude that proof of a mark's strength sufficient for federal trademark infringement purposes is necessarily sufficient to sustain a claim of dilution-by-blurring under Missouri law. For example, the district court concluded as a matter of law that Viacom's BLOCKBUSTER mark is strong because it is suggestive of a commonly understood meaning of that word, a hit movie. But a visit to the dictionary confirms that the original meaning of the word was a very large bomb designed to be dropped from an airplane. Thus, while BLOCKBUSTER is suggestive of some of the movies Blockbuster Video stores sell or rent, it is equally suggestive of some of the fireworks Ingram sells. Of course, there is much more to the questions of trademark infringement and dilution than these simple word associations. But the fact that Viacom is seeking a complete monopoly on the use of a rather common word with multiple meanings would make us hesitate to uphold summary judgment on its dilution-by-blurring claim, even if the district court had not erred in disregarding Ingram's § 1125(c)(3) defense. As one treatise concluded its discussion of dilution-by-blurring, "this is a potent legal tool, which must be carefully used as a scalpel, not a sledgehammer." 3 McCarthy at § 24:114, p. 24-208.

Finally, we must address the important question of the district court's permanent injunction against Ingram's use of BLOCKBUSTER marks in Missouri. Because the

court erred in granting summary judgment on Viacom's state law anti-dilution claim,[10] the permanent aspect of this injunction  must be set aside.  However, the district court had discretion to issue a preliminary injunction to this effect, and its analyses of the trademark infringement and dilution issues strongly suggest that it would have done so had it not considered a permanent injunction appropriate.   In these unusual circumstances, we will leave the injunction in place as a preliminary injunction, without prejudice to the district court revisiting the issue on remand.

For the foregoing reasons, we reverse the grant of summary judgment on Viacom's state law anti-dilution claim, reverse in part the dismissal of Viacom's FTDA dilution claim, and remand for further proceedings not inconsistent with this opinion. The permanent injunction entered by the district court will remain in effect as a preliminary injunction, subject to that court's discretion to modify or vacate the decree.

A true copy.


Attest:


CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[10]Viacom argues on appeal that it has also proved dilution by tarnishment, which occurs "when a defendant uses the same or similar marks in a way that creates an undesirable, unwholesome, or unsavory mental association with the plaintiff's mark." Anheuser-Busch, 28 F.3d at 777 (quotation omitted).  We reject the contention that, *as a matter of law*, the sale of fireworks tarnishes a business that rents movies.