

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-3-2000

# Times Mirror Magazines v. Las Vegas Sports News

Precedential or Non-Precedential:

Docket 99-1299

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"Times Mirror Magazines v. Las Vegas Sports News" (2000). *2000 Decisions*. Paper 88.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/88

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed May 3, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 99-1299

TIMES MIRROR MAGAZINES, INC.

v.

LAS VEGAS SPORTS NEWS, L.L.C.,
d/b/a LAS VEGAS SPORTING NEWS,
        Appellant.

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 98-cv-05768)
District Judge: Honorable Bruce W. Kauffman

Argued: January 13, 2000

Before: Alito, Barry and Aldisert, Circuit Judges.

(Opinion Filed: April 28, 2000)

ORDER AMENDING SLIP OPINION

It is HEREBY ORDERED that the Slip Opinion filed in
this case on April 28, 2000, be amended as follows:

(1) Page 2, para. 1 ("The issue on appeal . . .") should be
deleted in its entirety and replaced with the following two
paragraphs:

In 1886 the phrase "The Sporting News" was granted
federal trademark protection and since that time it has
been the banner headline of a weekly publication entitled
The Sporting News. The mark is now owned by its
publisher, Times Mirror Magazines, Inc. This appeal

requires us to decide if Times Mirror was entitled to a preliminary injunction enjoining a publisher from using the name Las Vegas Sporting News.

Applying the relatively new Federal Trademark Dilution Act of 1995, 15 U.S.C. S 1125(c) ("FTDA" or "Act"), the district court issued the injunction against Las Vegas Sports News, L.L.C., d/b/a Las Vegas Sporting News ("LVSN"), from using the name on its weekly sports-betting publication. The court concluded that Times Mirror was likely to succeed on the merits of its dilution claim against LVSN, because the mark was "famous" in its niche market and LVSN's use of the title on its publication diluted the Times Mirror's mark by blurring its distinctiveness.

(2) Page 3, Section I, first para. ("In 1886. . .") should be deleted without replacement.

(3) Page 14, Section IV, second para. ("To be sure, S 1125(c)(1) . . .") should be deleted and replaced with the following four paragraphs:

The federal dilution statute must not be considered in vacuo, especially where as here the senior mark is registered in the U.S. Patent and Trademark Office. The trademark registration statute 15 U.S.C. S 1052 emphasizes that a mark that is "merely descriptive" shall not be entitled to federal registration, see S 1052(e), unless the mark acquires secondary meaning. See Scott Paper Co. v. Scott's Liquid Gold, Inc., 589 F.2d 1225, 1228 (3d Cir. 1978). We have already demonstrated in Part III.B.1, supra , that "The Sporting News" has acquired secondary meaning and"has become distinctive" in its market. SeeS 1052(f) ("[N]othing in this chapter shall prevent the registration of a mark used by the applicant which has become distinctive of the applicant's goods in commerce.").

J. Thomas McCarthy, the leading commentator on the subject, states:

> In the author's view, there is in [S 1125(c)(1)] no separate statutory requirement of "distinctiveness," apart from a finding that the designation be a"mark" that is "famous." "Distinctiveness" is used here only as a synonym for "fame." Even if "distinctiveness" is

2

regarded as a separate requirement, it would, in the author's view, be redundant. To be a "mark" eligible in the first place for protection under [S 1125(c)(1)], basic trademark principles dictate that a designation has to be "distinctive" either inherently or through acquisition of secondary meaning.

4 McCarthy, supra, S 24:91 (footnotes omitted).[1]

McCarthy explains the legislative history behind S 1125(c)(1)'s "distinctive and famous" language:

The 1987 Trademark Review Commission Report, the genesis of the language contained in the 1996 federal Act, said that the dual mention of both "distinctive and famous" in the introduction to the list of factors was inserted to emphasize the policy goal that to be protected, a mark had to be truly prominent and renowned. The double-barreled language "distinctive and famous" reflected the goal that protection should be confined to marks "which are both distinctive, as established by federal registration at a minimum, and famous, as established by separate evidence." The Commission inserted the term "distinctive" as hyperbole to emphasize the requirement that the mark be registered, for without inherent or acquired distinctiveness, the designation would not have been a mark that should have federally registered in thefirst place. The Trademark Review Commission Report reveals that the Commission saw distinctiveness and fame as two sides of the same evidentiary coin which requires widespread and extensive customer recognition of the plaintiff 's mark. However, when in the 1995 House amendment, the requirement of federal registration was dropped from the Bill, Congress neglected to also drop the mention of "distinctive"

_____

1. The Trademark Review Commission Report, the impetus behind the FTDA, stated: "The same type of evidence which is traditionally used to prove distinctiveness can be used to prove fame. Although the registrant is not required to prove distinctiveness apart from the import of registration, any additional evidence of distinctiveness will ordinarily be
entitled to substantial weight." Report of the Trademark Review Commission, 77 Trademark Rep. 375, 459-460 (1987).

introducing the list of factors. Thus, the word "distinctive" was left floating in the statute, unmoored to either any statutory requirement or underlying policy goal.

Id. (footnotes omitted).

Accordingly, we are not persuaded that a mark be subject to separate tests for fame and distinctiveness. In any event, we have already addressed in separate contexts the famousness and distinctiveness of "The Sporting News." See supra Part III.A (fame in niche market); supra Part III.B.I (distinctiveness acquired from secondary meaning). Having decided that Times Mirror has proved that its mark had gained secondary meaning and a high degree of distinctiveness in the market, there is no necessity for proving an additional test of distinctiveness. See Viacom, Inc. v. Ingram Enterprises, Inc., 141 F.3d 886, 890 n.6 (8th Cir. 1998).

(4) Page 15, Section V, para. 2 ("Before discussing . . ."), delete the first three sentences of this paragraph without replacement; and on Page 18, Section V, one sentence after the citation to the District Court Opinion (D. Ct. Op.), delete the sentence "Although the district court applied. . . by blurring its distinctive qualities" without replacement.

(5) Page 18, Section V, first full para. on the page ("Actual confusion has been shown . . .") should be deleted without replacement.

(6) Page 18, Section V, second full para. on the page ("Finally, Times Mirror did not . . .") should be deleted without replacement.

By the Court:

/s/ Ruggero J. Aldisert

Circuit Judge

Dated: May 3, 2000

4

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

5