**HASBRO, INC., Plaintiff,**

v.

**CLUE COMPUTING, INC., Defendant.**

**No. CIV. A. 97–10065–DPW.**

United States District Court,
D. Massachusetts.

Sept. 2, 1999.

Richard J. McCarthy, Edwards & Angell, Boston, MA, Kenneth B. Wilson, Michael B. Levin, Wilson, Sonsini, Goodrich & Rosati, Palo Alto, CA, for Hasbro, Inc., Plaintiffs.

Thomas A. Mullen, Wakefield, MA, for Clue Computing, Inc., Defendant.

## MEMORANDUM AND ORDER

WOODLOCK, District Judge.

Plaintiff Hasbro, Inc. brings this suit against Clue Computing, Inc., a Colorado company, for trademark infringement upon and dilution of the CLUE ® trademark. Hasbro, which owns the CLUE ® mark corresponding to the game CLUE, alleges that Clue Computing has infringed upon its trademark rights and diluted its famous mark through the use of a World Wide Web site at the address of "clue.com." Clue Computing has moved for summary judgment on all three counts in the case—a federal trademark infringement claim, a federal trademark dilution claim, and a state trademark dilution claim. Hasbro has moved for summary judgment on the two dilution claims. As to the dilution claims, the parties have consented to have me act as finder of fact on the records presented. For the reasons set forth below, I will grant Clue Computing's motion for summary judgment on the trademark infringement claim and will as finder of fact award judgment for Clue Computing on the dilution claims.

## I. BACKGROUND

A general discussion of the Internet and associated legal issues is provided in a previous memorandum and order in this case. *Hasbro, Inc. v. Clue Computing, Inc.*, 994 F.Supp. 34, 36–37 (D.Mass.1997).[1] I include here background information about the parties and this litigation directly relevant to the motions currently before me. Portions of this background section are drawn from the prior memorandum. *See id.* at 37–39.

### A. Defendant Clue Computing, Inc.

Clue Computing, Inc. is a Colorado corporation located in Longmont, Colorado. It is in the business of computer consulting. Created in 1994 as a partnership, Clue Computing is now owned by Eric Robison. (Def. Clue Computing, Inc.'s Concise Statement of Material Facts as to Which There Is No Genuine Issue ("Def.'s Facts") ¶ 1.) Clue Computing was incorporated in Colorado as Clue Computing, Inc. on May 22, 1996. (*Id.* ¶ 1.) Robison is the sole full-time employee of Clue Computing. (*Id.*) According to the defendant, Robison and Dieter Muller, Robison's friend and co-founder of Clue Computing, chose the name Clue Computing for reasons unrelated to the game of CLUE ®. Defendant asserts that the name came about as a joke when Robison and Muller were both employed at another company. When individuals would call themselves "clueless" in conversation, Muller and Robison would hand them a card with the word "clue" on it. (*Id.* ¶ 9.)

The partnership Clue Computing, predecessor to Clue Computing, Inc., registered the Web domain "clue.com" with Network Solutions, Inc. ("NSI") on June 13, 1994, and the company has used the Web site at that address ever since. (*Id.* ¶¶ 1, 5; Pl. Hasbro, Inc.'s Statement of Material Facts as to Which There Is No Genuine Issue To Be Tried ("Pl.'s Facts") ¶ 6.)[2] The company uses the Web site to advertise its busi-

---

1. A provocative general discussion about legal issues involving the Internet is provided in a recent "Developments" Note. *Developments in the Law—The Law of Cyberspace,* 112 Harv. L.Rev. 1574 (1999).

2. Clue Computing also owns the domain name "clue-computing.com" which it acquired when concerned that NSI would shut down the site of "clue.com." (*See* Levin Decl., Ex. F at 6–7, and Ex. H to Ex. F.)

ness, including Internet consulting, training, system administration, and network design and implementation. The Web site offers the address, phone number, and email address for the company. In addition, those Internet users who view the site can instantly email the company by clicking on the page. (Def.'s Facts ¶¶ 5, 11; Levin Decl., Ex. C.) Additionally, several individuals use the "clue.com" site for personal email and Web sites. (Def.'s Facts ¶ 5.)

## B. Plaintiff Hasbro, Inc.

Hasbro, Inc. designs, manufactures and markets children's toys and related items. Hasbro owns the CLUE ® trademark for the CLUE ® board game, a murder mystery game where participants attempt to discover which character committed a murder in which room with which weapon. (Pl.'s Facts ¶ 1; Mem. in Supp. of Pl. Hasbro, Inc.'s Mot. for Partial Summary Judgment ("Pl.'s Mem.") at 2.) The game was invented in 1944, and the name CLUE ® has been registered in the United States as a trademark of Hasbro and predecessor companies since 1950. (Pl.'s Facts ¶ 1; Pl.'s Mem. at 2.)

Hasbro has developed CD–ROM versions of many of its traditional games and is marketing these games on the World Wide Web, e.g. the MONOPOLY ® game at "monopoly.com," the BATTLESHIP ® game at "battleship.com," and others. Hasbro has developed a CDROM version of the CLUE ® game as well. (Pl.'s Mem. at 3.) However, in 1996 Hasbro discovered that Clue Computing owned the domain name "clue.com." (*Id.* at 5.)

## C. Procedural History

Under the rules of NSI, the organization which registers domain names, any evidence of violation of a registered trademark requires NSI to put the domain name on hold status, not to be available for use by any party, pending resolution of the dispute. Therefore, in 1996, NSI, after being notified by Hasbro of a potential trademark violation, contacted Clue Computing to inform Robison that his Internet site would be frozen. Clue Computing then filed suit in state court in Colorado and obtained an injunction on June 28, 1996, forbidding NSI from altering Clue Computing's use of "clue.com." That injunction is still in effect, pending resolution of this case.[3] (Def.'s Mem. of Law in Supp. of Mot. for Summary Judgment ("Def.'s Mem.") at 4.)

Thereafter, Hasbro brought this action against Clue Computing in this court. In earlier dispositive motion practice, I denied a motion to dismiss for lack of personal jurisdiction. *Hasbro, Inc. v. Clue Computing, Inc.*, 994 F.Supp. 34 (D.Mass.1997).

## II. STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A material fact is one which has the "potential to affect the outcome of the suit under applicable law." *Sanchez v. Alvarado*, 101 F.3d 223, 227 (1st Cir.1996). A genuine issue is "one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant, would permit a rational factfinder to resolve the issue in favor of either party." *Medina–Munoz v.*

---

**3.** NSI also brought an interpleader action against both Clue Computing and Hasbro in the federal court of the District of Colorado. That court dismissed the lawsuit, at the request of both Clue Computing and Hasbro, for lack of subject matter jurisdiction.

Clue Computing is now also using the Web site to post information concerning the instant lawsuit and the NSI lawsuit in Colorado state court. Clue Computing has made the legal papers available under the heading "Hasbro and NSI involve Clue in massive legal dispute." (Levin Decl., Ex. C.)

*R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990) (citations omitted).

Therefore, to succeed on a summary judgment motion, "the moving party must show that there is an absence of evidence to support the nonmoving party's position." *Rogers v. Fair*, 902 F.2d 140, 143 (1st Cir.1990). In order to preclude summary judgment, the nonmoving party must submit "sufficient evidence supporting the claimed factual dispute to require a choice between the parties' differing versions of the truth at trial." *LeBlanc v. Great Am. Ins. Co.*, 6 F.3d 836, 841 (1st Cir.1993), *cert. denied*, 511 U.S. 1018, 114 S.Ct. 1398, 128 L.Ed.2d 72 (1994) (internal quotations and citations omitted).

At the hearing on the parties' summary judgment motions, the parties, recognizing that I sit on the dilution claims as the ultimate fact finder and weigher of equity, agreed to have the matter submitted on the papers as to the dilution claims.

Accordingly, in this memorandum I treat the trademark infringement claim according to the standard of review for summary judgment and I treat the dilution claims as finder of fact.

## III. DISCUSSION

### A. Trademark Infringement

Hasbro claims that Clue Computing infringed its CLUE ® trademark under 15 U.S.C. § 1125(a), which states in relevant part:

(1) Any person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol, or device . . ., which—(A) is likely to cause confusion, or to cause mistake, or

to deceive as to the affiliation, connection, association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

■ Trademark law seeks to prevent one seller from using a "mark" identical or similar to that used by another seller in a way that confuses the public about the actual source of the goods or services in question. *Star Fin. Services, Inc. v. Aastar Mortgage Corp.*, 89 F.3d 5, 9 (1st Cir. 1996). Such confusion may prevent the buyer from obtaining the goods he seeks or may endanger the reputation of the first user of the mark by association with the subsequent user. *DeCosta v. Viacom Int'l, Inc.*, 981 F.2d 602, 605 (1st Cir.1992), *cert. denied*, 509 U.S. 923, 113 S.Ct. 3039, 125 L.Ed.2d 725 (1993). To prevail on a trademark infringement claim, a plaintiff must show 1) use and therefore ownership of the mark 2) use by the defendant of the same mark or a similar one, and 3) likelihood that the defendant's use will confuse the public, thereby harming the plaintiff. *Id.* The first two components of this test are not in contention in this case; thus the key to Hasbro's infringement claim is the element of confusion.[4]

With respect to the element of confusion, the First Circuit has held:

We require evidence of a "substantial" likelihood of confusion—not a mere possibility—and typically refer to eight factors in making the assessment: (1) the similarity of the marks; (2) the similari-

---

4. The First Circuit has also set out three prerequisite elements which the plaintiff must satisfy to be entitled to any form of trademark protection, whether on infringement or dilution grounds. These elements are that the "marks (a) must be used in commerce, (b) must be non-functional, and (c) must be distinctive." *I.P. Lund Trading v. Kohler Co.*, 163 F.3d 27, 36 (1st Cir.1998). Neither party has disputed these prerequisites, but I note

that both the plaintiff's trademark and the defendant's domain name are clearly used in commerce and both are in themselves non-functional. Further, as explained in my discussion of strength of the mark, see Section III(A)(8) below, Hasbro's CLUE ® trademark is either suggestive or descriptive and in any case has secondary meaning. As such, it meets the level of distinctiveness required for trademark protection. *See id.* at 39.

ty of the goods [or services]; (3) the relationship between the parties' channels of trade; (4) the relationship between the parties' advertising; (5) the classes of prospective purchasers; (6) evidence of actual confusion; (7) the defendant's intent in adopting the mark; (8) the strength of the plaintiff's mark.

*Star,* 89 F.3d at 10 (quotation omitted); *see also I.P. Lund Trading v. Kohler Co.,* 163 F.3d 27, 43 (1st Cir.1998). I will analyze these factors in turn to determine whether there are sufficient facts to create a dispute as to the likelihood of confusion.

*1. Similarity of the marks.* The marks at issue are essentially identical. Hasbro owns the trademark for CLUE ®, while Clue Computing's web domain is "clue.com." However, "otherwise similar marks are not likely to be confused if they are used in conjunction with clearly displayed names, logos or other source-identifying designations of the manufacturer." *International Ass'n of Machinists and Aerospace Workers v. Winship Green Nursing Ctr.,* 103 F.3d 196, 204 (1st Cir. 1996) (hereinafter *"IAM"*). Here, Clue Computing's Web site is clearly headed "Clue Computing," contains a description of Clue Computing's business, and features a logo noticeably different from that of the Hasbro game (even though the logo contains a magnifying glass, as does some of the promotional material for the CLUE game). (*See* Levin Decl., Ex. C; *compare* Levin Decl.,Ex. B.) These surrounding conditions mitigate somewhat the similarity of the marks, although they do not change the fact that the domain name itself, without necessarily going to the Web page, is identical to Hasbro's mark. "Still, similarity is determined on the basis of the designation's total effect, and infringement 'does not exist, though the marks be identical and the goods very similar, when the evidence indicates no [likelihood of confusion].'" *IAM,* 103 F.3d at 203–04 (quoting *James Burrough Ltd. v. Sign of the Beefeater, Inc.,* 540 F.2d 266, 274) (7th Cir.

1976)) (citation omitted). Ultimately, the similarity of the marks here will not be decisive if other factors indicate a lack of confusion.

*2. Similarity of Goods and Services.* I find very little similarity between Hasbro's products and Clue Computing's services. Hasbro's CLUE is promoted, even in its CD–ROM form, as "The Classic Detective Game." (*See* Larson Sept. 25 Aff., Ex. S.) Clue Computing, according to its Web site, "offers a wide array of computing consulting services for businesses needing dependable, high quality work done at a reasonable price." (Levin Decl., Ex. C.) These products as presented on the Internet—the arena at issue in this case—could scarcely be more different.

Hasbro, however, attempts to show that their product and Clue Computing's product do in fact have substantial overlap. Hasbro provides on-line technical support to users of its CLUE ® CD–ROM game, (Puffer Decl. ¶ 2), which it alleges is similar to the support services that Clue Computing provides. (Pl. Hasbro, Inc.'s Mem. in Opp'n to Def.'s Mot. for Summary Judgment ("Pl.'s Opp'n") at 16.) First, it is an extraordinary stretch to assert that Hasbro's technical support to game users is similar in any meaningful way to the "computing consulting services" provided by Clue Computing. Second, even to the extent that Hasbro may provide similar services, these services are at most a small component of the CLUE product and are entirely subordinate to its nature as a game. CLUE players seeking on-line support services will be seeking Web sites dedicated to the game, not to computer services in general. I do not find Hasbro's argument to be persuasive.

Hasbro also asserts that Clue Computing's inclusion of "The Land of the Faerie, a recently-released album by Darrah Nagle," (Levin Decl., Ex. C at H0067) in their Web site shows that Clue Computing provides entertainment services similar to those at Hasbro's CLUE-related Web sites. "The Land of the Faerie" appears completely irrelevant to this dispute; it is

not prominently featured on Clue Computing's site and in any case has no particular connection to the game CLUE.

Courts have generally required far stronger showings than those present here to find similarity of goods. The First Circuit, for example, found two products dissimilar even though both were cameras because "[t]heir appearances are strikingly different so much so that one could not be mistaken for the other." *Pignons S.A. de Mecanique de Precision v. Polaroid Corp.*, 657 F.2d 482, 487 (1st Cir.1981).

*3–5. Channels of Trade; Advertising; Classes of Prospective Purchasers.* In accordance with First Circuit precedent, *see IAM*, 103 F.3d at 204; *Star*, 89 F.3d at 10 n. 3, I will here consider these three categories together. Clue Computing conducts most of its business, including publicizing its services, through the Internet. (Def.'s Facts ¶ 5.) Hasbro has advertised the game CLUE in many different forums, including promotional trade catalogs, television commercials, and promotional literature included in the packaging of other Hasbro games, (Riehl Decl. ¶ 8),[5] and has sold many copies of the game through retail stores, among other outlets. (Riehl Decl., Ex. B.) Hasbro has also in recent years begun advertising and selling its CLUE products over the Internet, creating some overlap with Clue Computing in advertising and channels of trade. (Puffer Decl. ¶¶ 2, 4–5.)

However, while Clue Computing does almost all of its business over the internet, Hasbro's documents indicate that Internet advertising and sales make up a very small component of its business involving the game CLUE. (Riehl Decl., Exs. B, D at H000502.) Where products have some overlap in channels of advertising and trade but primarily occupy different channels,

courts have not found likelihood of confusion based on this factor. *See Pignons*, 657 F.2d at 488–89 (finding primarily different advertising and channels of trade for two cameras despite some common advertising in photographic magazines and sales in camera stores); *cf. Black Dog Tavern Co. v. Hall*, 823 F.Supp. 48, 55–56 (D.Mass.1993) (finding "minimal overlap" in channels of trade and advertising even though both products are T-shirts sold primarily in Martha's Vineyard).

Similarly, while Hasbro's prospective purchasers are any people who might want to buy a CLUE game, Clue Computing's prospective purchasers are people seeking Internet and computer consulting services. These groups may have some overlap in the broad category of Internet users, but they also surely have large segments which do not overlap. In considering whether the class of prospective purchasers will confuse the two products, "a court called upon to assay likelihood of confusion must ponder the sophistication of the class, thereby taking account of the context in which the alleged infringer uses the mark." *IAM*, 103 F.3d at 204. There is no clear indication as to the level of sophistication of those Internet users who may be interested in each product. Hasbro states that many of its customers are unsophisticated about computers. (Pl.'s Opp'n at 9.)[6] Clue Computing originally targeted "clueless" customers, (Def.'s Facts ¶ 9), but now asserts its customers are sophisticated about the Internet. (Def.'s Mem. of Law in Opp'n to Pl.'s Mot. for Partial Summary Judgment at 10.) In any case, these prospective customers are plainly sophisticated enough to know the difference between a game and a computer consulting service, and they make up only a subset of Hasbro's prospective purchasers over all.

---

**5.** The entire declaration of Holly D. Riehl is sealed and confidential. I have cited her declaration as support for several general statements in this memorandum but have not revealed any specific information from her declaration.

**6.** *See Jews for Jesus v. Brodsky,* 993 F.Supp. 282, 303 (D.N.J.1998), *aff'd,* 159 F.3d 1351 (3d Cir.1998) (observing that "many Internet users are not sophisticated enough to distinguish between the subtle difference in the domain names of the parties").

*6. Actual Confusion.* From the more than four years since Clue Computing began using the "clue.com" domain name, Hasbro has produced only a few scraps of evidence of actual confusion between Clue Computing's Web site and Hasbro's trademark. Plaintiff has produced three emails, including two sent three minutes apart by the same person, directed to the email address link on Clue Computing's Web site asking about the game CLUE. (Levin Decl., Ex. G.) There is no way to verify the source or authenticity of two of the emails, so they are of limited value as evidence. Hasbro has produced an affidavit from the author of the third email saying that she was confused by the defendant's Web site and thought that it was connected to technical support for Plaintiff's CLUE CD-ROM. (Magestro Decl.) Hasbro also submitted an affidavit from one other customer who contacted the company after apparently searching for Hasbro's Web site without success and briefly becoming confused by Clue Computing's "clue.com" site. (Britt Decl.)

The fact that one, two or three people over four years may have expressed confusion between Clue Computing's Web site and Hasbro's game does not constitute the level of actual confusion necessary to support a general finding of likelihood of confusion. "[A] single misdirected communication is very weak evidence of consumer confusion." *Pignons*, 657 F.2d at 490. Indeed, several cases in this circuit have held similar evidence inadequate to show confusion. *See id.* at 489–91 (finding that a misdirected order for a camera and a deposition suggesting an instance of possible customer confusion over a four year period did not constitute a likelihood of confusion); *Black Dog*, 823 F.Supp. at 56 (finding that, when plaintiff produced evidence of a comment confusing the two products and at least one request to plaintiff for defendant's product in a two year period,

"the absence of more evidence of actual confusion weighs against a finding of likelihood of confusion"); *IAM*, 103 F.3d at 205–06 (finding that several alleged inquiries as to whether plaintiffs authored defendants' letter were insufficient and did not change the fact that "no person of ordinary prudence" would have been confused). By contrast, cases in which courts in this circuit found actual confusion contained significantly more evidence. *See Calamari Fisheries, Inc. v. The Village Catch, Inc.*, 698 F.Supp. 994, 1003–04, 1011 (D.Mass.1988) (evidence including a newspaper article confusing the plaintiff's and defendant's restaurants and numerous affidavits from staff people and customers detailing many instances of confusion between the restaurants); *Edison Brothers Stores, Inc. v. National Dev. Group, Inc.*, 1992 WL 55465, at *3 (D.Mass. Mar.6, 1992) ("plaintiff has made a strong demonstration by submitting uncontradicted affidavits" with numerous instances of confusion).

Furthermore, to the extent that Ms. Magestro's and Mr. Britt's affidavits show actual confusion, they do not show reasonable confusion, which is required to find infringement. "[T]he law has long demanded a showing that the allegedly infringing conduct carries with it a likelihood of confounding an appreciable number of reasonably prudent purchasers exercising ordinary care. This means, of course, that confusion resulting from the consuming public's carelessness, indifference, or ennui will not suffice." *IAM*, 103 F.3d at 201 (citations omitted). Considering the vast difference between Clue Computing's services and Hasbro's game and the explicitness of Clue Computing's Web site as to the nature of its business, any confusion shown by Hasbro seems to fit into the latter category of "carelessness, indifference, or ennui."[7]

---

**7.** Mr. Britt's declaration indicates some genuine effort to find Hasbro's Web site, rather than complete carelessness or indifference. Nevertheless, Clue Computing's evidence suggests that search engines turn up Hasbro's sites at least as easily as they turn up Clue Computing's. (Larson Sept. 25 Aff. ¶¶ 6, 7, Exs. T, U.) Moreover, Britt *did* realize that

Finally, the kind of confusion that is more likely to result from Clue Computing's use of the "clue.com" domain name—namely, that consumers will realize they are at the wrong site and go to an Internet search engine to find the right one—is not substantial enough to be legally significant. "[A]n initial confusion on the part of web browsers ... is not cognizable under trademark law." *Teletech Customer Care Management (Cal.), Inc. v. Tele–Tech Co.,* 977 F.Supp. 1407, 1414 (C.D.Cal.1997). *See also Jews for Jesus,* 993 F.Supp. at 303 (distinguishing Web sites in which a reading of the defendant's site will eliminate the likelihood of confusion because of the noticeably different content). *But see Interstellar Starship Services, Ltd. v. Epix Inc.,* 184 F.3d 1107 (9th Cir.1999) (recognizing "a brand of confusion called 'initial interest' confusion which permits a finding of a likelihood of confusion although the consumer quickly becomes aware of the source's actual identity."); *Panavision Int'l, L.P. v. Toeppen,* 141 F.3d 1316, 1327 (9th Cir.1998) (finding that, when trademark is used as another entity's domain name, use of search engine to find the Web site sought may be time-consuming and frustrating and may deter customers). Indeed, the parties dispute the ease of finding Hasbro's site for CLUE. (*Compare* Larson Sept. 25 Aff. ¶¶ 6, 7, Exs. T, U *with* Levin Decl., Ex. F at 6 *and* Britt Decl.) I conclude that, although the need to search for Hasbro's site may rise to the level of inconvenience, it is not sufficient to raise a dispute as to actual confusion. The paucity of evidence of reasonable and actual confusion weighs heavily against Hasbro's ability to show a likelihood of confusion.

7. *Intent.* Plaintiff has produced no evidence that Clue Computing intended to create confusion among consumers between its services and Hasbro's game. The fact that Clue Computing's founders knew of the existence of the game (Levin Decl., Ex. K at 7, Ex. L at 4) does not in any sense mean that they intended for their company to infringe upon or benefit from Hasbro's mark. *See Ringling Bros.-Barnum & Bailey Combined Shows, Inc. v. Utah Div. of Travel Dev.,* 955 F.Supp. 605, 620 (E.D.Va.1997), *aff'd,* 170 F.3d 449 (4th Cir.1999) (hereinafter *"Ringling 1"*) ("Utah's adoption and use of its mark notwithstanding its knowledge of Ringling's famous mark cannot, without more, demonstrate predatory intent."). Similarly, Hasbro's opinion that Clue Computing chose a logo "suspiciously similar" to the graphics for the CLUE game is not persuasive in showing intent. (Pl.'s Opp'n at 21; Levin Decl., Ex. E.) Both logos use a magnifying glass, but the word 'clue' has long been associated with detectives and magnifying glasses, independent of Hasbro's game. Hasbro has produced no evidence that gives rise to an inference of intent. I note, however, that the First Circuit recently commented that courts should not give great weight to a finding of lack of intent in determining likelihood of confusion because the presence or absence of intent does not impact the perception of consumers whose potential confusion is at issue. *See Lund,* 163 F.3d at 44.

8. *Strength of the Mark.* The strongest marks are those which are "arbitrary and fanciful," *Calamari,* 698 F.Supp. at 1006, a category which clearly does not apply to the common word "clue." Neither is the plaintiff's mark "generic," the weakest type of mark, *id.,* despite being a common word. "Generic" terms are those which refer to a category of good or service, without distinguishing the source or origin of the specific product. *Id.* CLUE ® clearly does not refer to a general category of goods. Hasbro's mark may be characterized as "descriptive," meaning that it "portrays a characteristic of the article or service to which it refers" (in this case, a game involving clues and mystery), but it appears to fit most readily into the catego-

---

"clue.com" was not affiliated with Hasbro—essentially proving Clue Computing's point—

and proceeded to contact Hasbro successfully. (Britt Decl. ¶ 6.)

ry of "suggestive" marks, which "connote rather than describe a particular product or service and require the consumer's imagination to reach a conclusion as to the nature of the product or service." *Id.* at 1006–07. The mark CLUE suggests mystery or detective work but requires the consumer's imagination to conclude that it refers to a mystery game.

■ In any case, Hasbro has fully demonstrated that the mark has secondary meaning, which refers to an association by consumers between the trade name and a single provider of the good or service, and which strengthens the mark. *See id.* at 1008. Secondary meaning can be established by evidence of long and exclusive use, the prominence of the plaintiff's enterprise, extensive advertising and promotion of the mark, and recognition of secondary meaning among the public. *Id.; Volkswagenwerk Aktiengesellschaft v. Wheeler,* 814 F.2d 812, 816 (1st Cir.1987). Hasbro has provided evidence of all of these factors. (Riehl Decl. ¶¶ 3–12, Exs. A–D.) Thus, while CLUE® is not in the most protected category of trademarks, it is clearly a strong mark.

■ Nonetheless, the strength of a trademark is not decisive in an infringement inquiry. "[T]he muscularity of a mark, in and of itself, does not relieve the markholder of the burden to prove a realistic likelihood of confusion." *IAM,* 103 F.3d at 206. Here, Hasbro has not done so. Hasbro has produced evidence proving similarity of the marks and strength of its mark, but it has failed to produce any adequate evidence indicating intent to confuse, common channels of trade and advertising, common prospective purchasers, and the crucial categories of similarity of the products and actual confusion. Overall, Hasbro has failed to demonstrate, as a

matter of law, that there is a likelihood that consumers will confuse Clue Computing's computer consulting Web site with Hasbro's game. Thus, Hasbro has failed to show a genuine issue of material fact on a crucial element of its federal trademark infringement claim, and Clue Computing is entitled to summary judgment on that claim.

## B. Federal Trademark Dilution Act
### 1. Retroactivity

The Federal Trademark Dilution Act ("FTDA"), 15 U.S.C. § 1125(c), upon which Hasbro mounts a claim distinct from its trademark infringement claim, took effect in January 1996. Clue Computing claims that applying the FTDA to it would be impermissibly retroactive because a grant of an injunction based on that act would deprive it of property rights lawfully acquired before the act was passed. (Def.'s Mem. at 7.) Clue Computing, predecessor to Clue Computing, Inc., began using the domain "clue.com" in 1994,[8] before the FTDA took effect. The FTDA created a new cause of action to protect a "famous" trademark from dilution whether or not another's use of that mark is likely to result in confusion, which had been required by the preexisting federal trademark statutes.

The Supreme Court most recently explained the prohibition on retroactive application of statutes in *Landgraf v. USI Film Products,* 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). The Court wrote:

When a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach.... When ... the statute contains no such express command, the court must determine

---

**8.** The fact that Clue Computing was incorporated in May 1996, after the FTDA was passed, is not relevant. Clue Computing, Inc. was substantially the same entity as Clue Computing and continued using the "clue.com" Web site in the same way after incorpo-

ration. In any case, since I find that application of the FTDA in this case is not retroactive even though the domain name was established in 1994, this question is of no consequence.

whether the new statute would have retroactive effect, i.e., whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result.

*Id.* at 280, 114 S.Ct. 1483. Although *Landgraf* did not involve injunctive relief, the Supreme Court provided some relevant commentary, observing that "application of new statutes passed after the events in suit is unquestionably proper in many situations. When the intervening statute authorizes or affects the propriety of prospective relief, application of the new provision is not retroactive." *Id.* at 273, 114 S.Ct. 1483. The Court notes that in an older case, "we observed that 'relief by injunction operates in futuro,' and that the plaintiff had no 'vested right' in the decree entered by the trial court." *Id.* at 274, 114 S.Ct. 1483 (quoting *American Steel Foundries v. Tri–City Central Trades Council,* 257 U.S. 184, 201, 42 S.Ct. 72, 66 L.Ed. 189 (1921)).

Applying the first part of the Court's *Landgraf* test to the FTDA, it is clear that Congress did not expressly address the issue of retroactivity. It is necessary, then, to consider whether granting an injunction based on 15 U.S.C. § 1125(c) in this case would be giving the statute retroactive effect. This question is one of first impression in this circuit, but a number of courts in other circuits have faced this precise issue.

Several courts have found that granting an injunction based on the FTDA against a party whose dilution of the trademark in question began before the enactment of the Act constitutes impermissibly retroactive application of the statute. Most prominently, Judge Payne confronted the question in *Circuit City Stores, Inc. v. OfficeMax, Inc.,* 949 F.Supp. 409 (E.D.Va.

1996) and found that "enforcing the Dilution Act in this action would have an impermissible retroactive effect and would run afoul of the teaching and holding of *Landgraf.*" *Id.* at 418. There, OfficeMax, owner of a chain of office superstores, brought claims against CarMax, a chain of used car and truck stores wholly owned by Circuit City, Inc., for trademark infringement and dilution through the use of the "Max" suffix. The *Circuit City* court noted that CarMax built up its business and spent large sums of money promoting it in the years before the enactment of the FTDA. *Id.* at 415. Judge Payne observed that the Supreme Court "recognized that '[t]he largest category of cases in which we have applied the presumption against statutory retroactivity has involved new provisions affecting contractual or property rights, matters in which predictability and stability are of prime importance." *Id.* (quoting *Landgraf,* 511 U.S. at 271, 114 S.Ct. 1483). The *Circuit City* court concluded:

> [T]he Dilution Act significantly expanded the reach of the Lanham Act by creating new obligations, imposing new duties, and attaching new disabilities with respect to marks already adopted. Whether forced to pay money damages or to suffer an injunction barring future use of the CarMax marks, the effect on CarMax of applying the Dilution Act is effectively the same—CarMax would lose its very identity, achieved as the result of conduct and commercial investment, which was perfectly lawful at the time.

*Circuit City,* 949 F.Supp. at 415.

Judge Payne considered the Supreme Court's characterization of injunctive relief in *Landgraf* as prospective and found the Court's statements irrelevant to application of the FTDA.

> [T]he cited passage from *Landgraf* does not stand for the proposition that the enforcement of a statute providing for injunctive relief can never be impermissibly 'retroactive.' Rather, the dicta on

which OfficeMax relies speaks solely to cases in which the relevant conduct was already illegal before the effective date of the intervening statute.

*Id.* at 417. He noted that two cases cited by the Supreme Court in *Landgraf* in support of its description of injunctive relief as prospective dealt with conduct that was illegal even before the new statute. *Id.*

Several other district courts have accepted the *Circuit City* analysis wholesale. Judge Beaty in *Resorts of Pinehurst, Inc. v. Pinehurst Nat'l Dev. Corp.*, 973 F.Supp. 552 (M.D.N.C.1997) quoted the *Circuit City* opinion at great length and reached the same result. *Id.* at 555–60. The *Pinehurst* court concluded that "[s]ince Defendants' action of adopting their names and putting those names into the public arena were completed prior to the effective date of the Act, it is evident that these actions did not violate any federal dilution law at the time they were accomplished," and that application of the act would therefore be retroactive. *Id.* at 560. At least three other district courts have come to the same conclusion. *See Nike, Inc. v. Nike Securities, L.P.*, 1999 WL 98346, at *6–*7 (N.D.Ill. Feb.19, 1999); *S Industries, Inc. v. Diamond Multimedia Systems, Inc.*, 991 F.Supp. 1012, 1021 (N.D.Ill.1998); *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, Civ. No. 96–397, at 11–15 (W.D.Pa.Oct. 10, 1997).

■ However, three courts, including the one circuit court to consider the matter thus far, have reached the opposite conclusion. *See Viacom Inc. v. Ingram Enterprises, Inc.*, 141 F.3d 886 (8th Cir.1998); *Fuente Cigar, Ltd. v. Opus One*, 985 F.Supp. 1448 (M.D.Fla.1997); *Medic Alert Foundation United States, Inc. v. Corel Corp.*, 43 F.Supp.2d 933 (N.D.Ill.1999). Although none of these decisions is binding upon me, I find them persuasive in their argument that *Landgraf* can only be interpreted as making injunctions based on the FTDA permissible in all instances.

The Eighth Circuit has expressly rejected the *Circuit City* analysis, holding that,

"we will not brush away as dicta the Supreme Court's pronouncement that an intervening statute may 'authorize[ ] ... prospective relief' without running afoul of the traditional presumption against retroactivity. That pronouncement ... is part of a carefully crafted holding on retroactivity that is binding on this court." *Viacom*, 141 F.3d at 889. The *Fuente* court similarly concluded, "If the language in *Landgraf* stating that prospective relief cannot have retroactive effect is 'dicta,' then it is nonetheless dicta that goes to the essence of what 'retroactive effect' means." 985 F.Supp. at 1452. "Because prospective relief, by its very nature, attaches legal (as opposed to practical) consequences only to events after the statute's enactment, it has no retroactive effect." *Id.* at 1451. *See also Medic*, 43 F.Supp.2d at 941 (following the Eighth Circuit's analysis in *Viacom*).

The Eighth Circuit also dismissed the notion that injunctive statutes are purely prospective only when the conduct to be enjoined was illegal prior to the new statute's enactment. A survey of Supreme Court cases other than those specifically cited in *Landgraf*, the Eighth Circuit explained, shows that the Court has long found a broader range of injunctive statutes to be prospective than the *Circuit City* opinion recognized. *Viacom*, 141 F.3d at 889. The *Viacom* court quoted a century old Supreme Court case, in which the Court observed:

It is said that to grant the injunction prayed for in this case is to give the statute a retroactive effect; that the contract, at the time it was entered into was not prohibited or declared illegal by the statute, as it had not then been passed, and to now enjoin the doing of an act which was legal at the time it was done would be improper. We give to the law no retroactive effect. The agreement in question is a continuing one .... Assuming such action to have been legal at the time the agreement was first entered into, the continuation of the agreement, after it has been de-

clared to be illegal, becomes a violation of the act.

*United States v. Trans–Missouri Freight Ass'n,* 166 U.S. 290, 342, 17 S.Ct. 540, 41 L.Ed. 1007 (1897), *quoted in Viacom,* 141 F.3d at 889. Indeed, it would be hard to find a stronger statement than this one, when read in conjunction with *Landgraf,* that injunctive relief is prospective even if the prohibited conduct was legal when it first began. *Accord Fuente,* 985 F.Supp. at 1452.

I find the *Viacom* and *Fuente* courts correct in their assertion that the clear language of the Supreme Court may not be dismissed as irrelevant dicta and that the logical truism that prospective relief cannot be retroactive may not be evaded by a weakly supported distinction. If the Supreme Court had intended to create new law distinguishing for retroactivity purposes statutes governing injunctive relief relating to conduct already made illegal by other statutes from those granting injunctive relief relating to formerly legal conduct, it would have done so in a far more direct manner than what the *Circuit City* court was able to draw from *Landgraf.*

Indeed, the weakness of the *Circuit City* analysis suggests that the animating concern was less with legal doctrine than with a view of fairness. While equitable concerns are important, the application of them in *Circuit City* creates an untenable contradiction of established case law. As the *Fuente* court perceptively observed:

At the basis of *Circuit City*'s conclusion that prospective relief may have retroactive effect seems to be a concern that a party's justifiable expectations may be frustrated by such prospective relief.

. . .

Expectations, however justified and however dearly purchased, cannot immunize future conduct from legislative fiat. As the Supreme Court has stated, '[a] statute does not operate 'retroactively' merely because it ... upsets expectations based on prior law.' Indeed,

statutes routinely impose novel costs on prior business decisions, thereby 'unsettl[-ing] expectations and impos[-ing] burdens on past conduct.'

*Id.* at 1452–53 (citing *Landgraf,* 511 U.S. at 266, 270 n. 24, 114 S.Ct. 1483) (citations omitted from text). Clue Computing, Inc.'s predecessor Clue Computing, like CarMax, had no expectation that it would have problems with the federal trademark dilution statute at the time that it began using the 'clue.com' Web site because the statute did not yet exist. Consequently, any investments Clue Computing made in the Web site were presumably made with the expectation that such problems would not arise. Nonetheless, as the *Fuente* court spelled out, these expectations do not affect the prospective application of new legislation. Indeed, new property taxes or zoning regulations, for example, frequently upset property owners' reasonable expectations and yet are perfectly valid. *Id.*

The Eighth Circuit made a broader point about the presumption of prospective application for new statutes. "We agree that fairness is important in considering retroactivity issues.... However, the answer to this very real issue is not to abandon the general rule that new statutes may be enforced prospectively." *Viacom,* 141 F.3d at 889–90. The FTDA provides that injunctive relief should be granted "subject to the principles of equity and upon such terms as the court deems reasonable." 15 U.S.C.A. § 1125(c)(1). If Clue Computing's use of "clue.com" prior to enactment of the FTDA "was lawful and resulted in [Clue Computing] acquiring a valuable and legitimate property interest of its own," Hasbro is less likely to achieve success with this claim. *Viacom,* 141 F.3d at 890. But these equitable concerns arise in connection with consideration of the merits of the case, not in threshold analyses of problems created by the statute.

First Circuit precedent on retroactivity, although not addressing the FTDA specifically, supports the view that injunctive re-

lief is not impermissibly retroactive. In *Brown v. Hot, Sexy and Safer Productions, Inc.,* 68 F.3d 525, 538 (1st Cir.1995), *cert. denied,* 516 U.S. 1159, 116 S.Ct. 1044, 134 L.Ed.2d 191 (1996), the court found that a new statute could not provide the basis for money damages for actions occurring before the statute was enacted, but contrasted that to the use of a statute for injunctive relief. "Equitable relief ... is prospective rather than retroactive, even when it applies to conduct occurring before a statute's enactment." *Id.* Similarly, the court has held that "a statute may modify the legal effect of a present status or alter a preexisting relationship without running up against the retroactivity hurdle.... So long as a neoteric law determines status solely for the purpose of future matters, its application is deemed prospective." *McAndrews v. Fleet Bank of Mass., N.A.,* 989 F.2d 13, 16 (1st Cir.1993). These opinions suggest that the First Circuit would embrace the approach of *Viacom* and *Fuente* to the FTDA because an injunction would only affect the future status of Clue Computing's Web site. As a consequence, I decline to dismiss the FTDA claim as impermissibly retroactive.

### 2. Analysis Under the FTDA

I now turn to a substantive analysis of Hasbro's federal dilution claim.

"This case requires [me] to interpret and apply the dauntingly elusive concept of trademark 'dilution' as now embodied in the [FTDA]." *Ringling Bros.-Barnum & Bailey Combined Shows, Inc. v. Utah Div. of Travel Dev.,* 170 F.3d 449, 450 (4th Cir.1999) (hereinafter *"Ringling 2 "*).

■  The FTDA states:

The owner of a famous mark shall be entitled, subject to the principles of equity and upon such terms as the court deems reasonable, to an injunction against another person's commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark.

15 U.S.C. § 1125(c)(1). In an action under this statute, the plaintiff has the burden of proof to show (1) that it owns a famous mark, (2) that the defendant is making commercial use of the mark in commerce, (3) that the defendant adopted its mark after the plaintiff's mark became famous, and (4) that the defendant's mark dilutes the plaintiff's famous mark. *Avery Dennison Corp. v. Sumpton,* 189 F.3d 868 (9th Cir.1999).

Here, defendant does not contest factors 2 or 3, because Clue Computing clearly chose the "clue.com" domain name for commercial use in commerce after Hasbro's mark had risen to whatever level of fame it has acquired. Nor does defendant contest Hasbro's ownership of the CLUE ® mark. As a result, I will focus on the questions whether Hasbro's mark is a "famous mark" within the meaning of the statute and whether Clue Computing's use of the "clue.com" domain name dilutes the distinctiveness of the mark. I will also briefly examine an additional element established by the statute, whether "the principles of equity" entitle Hasbro to an injunction. 15 U.S.C. § 1125(c)(1); *see Avery Dennison Corp. v. Sumpton,* 999 F.Supp. 1337, 1339 (C.D.Cal.1998), *rev'd on other grounds,* 189 F.3d 868 (9th Cir.1999).

#### a. Fame of the Mark

■  The FTDA provides a non-exhaustive list of factors to consider in order to determine whether a mark is "distinctive and famous":

(A) the degree of inherent or acquired distinctiveness of the mark;

(B) the duration and extent of use of the mark in connection with the goods or services with which the mark is used;

(C) the duration and extent of advertising and publicity of the mark;

(D) the geographical extent of the trading area in which the mark is used;

(E) the channels of trade for the goods or services with which the mark is used;

(F) the degree of recognition of the mark in the trading areas and channels of trade used by the mark's owner and the person against whom the injunction is sought;

(G) the nature and extent of use of the same or similar marks by third parties; and

(H) whether the mark was registered. . . .

15 U.S.C. § 1125(c)(1). Review of this list reveals that the "determination whether a mark is famous and distinctive under Section 43(c) [of the Lanham Act, 15 U.S.C. § 1125(c)] is similar to the analysis for strength of the mark for trademark infringement purposes." *Trustees of Columbia Univ. v. Columbia/HCA Healthcare Corp.*, 964 F.Supp. 733, 749 (S.D.N.Y. 1997). However, the First Circuit has made clear that "a great deal more" is required to show fame of the mark than to show the secondary meaning required for infringement protection. *See Lund*, 163 F.3d at 47 (citation omitted). As noted above, Hasbro has used the CLUE ® mark for many years and has spent millions of dollars advertising the CLUE game, which has gained widespread recognition in the United States and abroad. (Riehl Decl. ¶¶ 3–12, Exs. A–D.) In addition, the CLUE ® mark was federally registered on the principal register in 1950, (McCann Decl., Ex. A), and has since become incontestable. *See* 15 U.S.C. § 1065. All of these factors weigh in favor of the mark's fame.

Two of the statutory factors deserve slightly more consideration: the distinctiveness of the mark [9] and third party uses of it. The factors discussed above—the widespread recognition of Hasbro's mark and its longtime use and advertising—suggest "acquired distinctiveness," which is recognized by the FTDA. However, as Clue Computing points out, "clue" is a common word with a variety of meanings, and at least one court has indicated that a mark may not be entitled to protection from dilution by use consistent with that mark's usage as a common word. *See Polo Ralph Lauren L.P. v. Schuman*, 1998 WL 110059, at *12 (S.D.Tex. Feb.9, 1998) (finding that defendant's use of the word 'Polo' in the name of his adult entertainment club traded on the plaintiff's mark, rather than on the common meaning of the word). Here, defendant's use of the word 'clue' is entirely consistent with the common usage of the word.

In addition, Clue Computing has documented a significant number of trademarks not owned by Hasbro using the word 'clue' or variations. (Larson Aff., Ex. 2 to Def.'s Facts, Ex. C.) This evidence suggests the possibility that "any acquired distinctiveness of the plaintiff's mark . . . has been seriously undermined by third party use of the same or similar marks." *Columbia*, 964 F.Supp. at 750. However, "[t]hird-party usage of a mark similar to the plaintiff [sic] is relevant only when defendants can show that the third-party's marks are actually used, well-promoted or recognized by consumers." *Gilbert/Robin-*

---

**9.** I reject Hasbro's contention that the Supreme Court's decision in *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 205, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985), dictates that the distinctiveness of an incontestable mark cannot be challenged. The Court in *Park 'N Fly* held that a defendant in an infringement action cannot assert that the plaintiff's incontestable trademark is invalid because it is descriptive. *Id.* However, as the Fourth Circuit has observed, "[t]he Court did not hold . . . that the descriptive nature of a mark may not be considered in the separate likelihood of confusion inquiry." *Petro Stopping Centers, L.P. v. James River Petroleum,* *Inc.*, 130 F.3d 88, 92 (4th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1561, 140 L.Ed.2d 793 (1998). Nor, more importantly for present purposes, did the Court hold that the nature of the mark may not be considered in the separate dilution of a famous mark inquiry.

Similarly, the conclusion above that the plaintiff's mark is sufficiently distinctive to meet the prerequisites for trademark protection is not dispositive here. "[F]amousness [under the FTDA] requires a showing greater than mere distinctiveness." *Avery Dennison Corp. v. Sumpton,* 189 F.3d 868 (9th Cir. 1999).

*son, Inc. v. Carrie Beverage–Missouri, Inc.,* 758 F.Supp. 512, 525 (E.D.Mo.1991), *aff'd,* 989 F.2d 985 (8th Cir.1993), *cert. denied,* 510 U.S. 928, 114 S.Ct. 338, 126 L.Ed.2d 282 (1993). The documentation of similar marks provided by Clue Computing demonstrates that at least some of them are used (many are listed as 'active') and may be well-promoted.

To be sure, some courts appear to have found marks to be famous in situations roughly analogous to this one. *See Lozano Enterprises v. La Opinion Publishing Co.,* 44 U.S.P.Q.2d 1764, 1769 (C.D.Cal.1997) (finding that the Spanish phrase "la opinion" is subject to FTDA protection as a famous mark). In *Johnson Publishing Co. v. Willitts Designs Int'l, Inc.,* 1998 WL 341618, at *7 (N.D.Ill. June 22, 1998), the court found the relatively common word "ebony" to be a famous mark, noting that "[t]hough there is some evidence of substantial third-party use of marks with the term 'Ebony' or with similar terms, this is not sufficient to overcome other factors indicating that the EBONY mark is famous." *Id.*

I find more persuasive, however, the opinions of other courts faced with marks consisting of relatively common terms and with use of the same terms by third parties, which have concluded that the contested marks were not sufficiently famous to warrant FTDA protection. *See Columbia,* 964 F.Supp. at 750 (finding that "any acquired distinctiveness" of Columbia University's mark for the name Columbia "in connection with medical or healthcare services has been seriously undermined by third party use of the same or similar marks"); *Sports Authority, Inc. v. Abercrombie & Fitch, Inc.,* 965 F.Supp. 925, 941 (E.D.Mich.1997) (finding that the Sports Authority's trademark for "authority" has been diminished by third party use and was "not so famous as to deserve protection under the federal dilution statute"). More importantly, the First Circuit has set out a high standard for district courts to find that a mark is famous for

the purposes of the FTDA. In *Lund,* the First Circuit wrote that "courts should be discriminating and selective in categorizing a mark as famous" and noted the "rigorous standard of fame." 163 F.3d at 46–47. Given this high standard, I find Hasbro has failed to establish that its mark, which is a common word that numerous third parties use, is famous and thus entitled to protection from dilution. I will, nonetheless, proceed to the substantive dilution analysis.

### b. Dilution of the Mark

#### 1. Per Se Dilution

■ The FTDA defines dilution as "the lessening of the capacity of a famous mark to identify and distinguish goods or services, regardless of the presence or absence of (1) competition between the owner of the famous mark and other parties, or (2) the likelihood of confusion, mistake or deception." 15 U.S.C. § 1127. The two kinds of dilution traditionally recognized are blurring and tarnishment. *Lund,* 11 F.Supp.2d at 125. Hasbro, however, urges me to join several other courts in recognizing what would be essentially a third, 'per se', category of dilution—use of another's trademark as a domain name. One such court, whose decision was recently reversed, asserted, "Courts presented with the question have held unanimously that it does 'lessen the capacity of a famous mark to identify and distinguish goods or services,' when someone other than the trademark holder registers the trademark name as an Internet domain name." *Avery Dennison Corp. v. Sumpton,* 999 F.Supp. 1337, 1340 (C.D.Cal.1998), *rev'd,* 189 F.3d 868 (9th Cir.1999); *see also Panavision Int'l, L.P. v. Toeppen,* 141 F.3d 1316, 1326–27 (9th Cir.1998); *Lozano,* 44 U.S.P.Q.2d at 1769. These courts seem to suggest that simply preventing a plaintiff from using his own famous trademark as a domain name dilutes the plaintiff's ability to identify his goods and services and may frustrate or deter potential consumers. *Avery,* 999 F.Supp. at 1340–41; *Panavi-*

*sion*, 141 F.3d at 1326–27. Indeed, Senator Patrick Leahy said in reference to the FTDA, "[I]t is my hope that this antidilution statute can help stem the use of deceptive Internet addresses taken by those who are choosing marks that are associated with the products and reputations of others." 141 Cong. Rec. § 19312091 (daily ed. Dec. 29, 1995). Although cited in *Panavision*, 141 F.3d at 1326, in support of something akin to a per se rule, the Leahy quotation suggests a more limited proposition, namely finding dilution only where the use of another's trademark as a domain name is deceptive or intentional.[10]

The statement of the District Court in *Avery* to the contrary notwithstanding, several courts have rejected such a per se rule. In *Lockheed Martin Corp. v. Network Solutions Inc.*, 43 U.S.P.Q.2d 1056, 1058 (C.D.Cal.1997), Judge Pregerson of the Central District of California wrote:

> [T]he law does not per se prohibit the use of trademarks or service marks as domain names. Rather, the law prohibits only uses that infringe or dilute a trademark or service mark owner's mark. Moreover, innocent third party users of a trademark or service mark have no duty to police the mark for the benefit of the mark's owner.

Another court differentiated a cybersquatter who took another's mark as a domain name in order to sell it back to the owner for profit—which the court found to be dilution—from "a situation where there were competing uses of the same name by competing parties and a race to the Internet between them," which would not necessarily be dilution. *Intermatic Inc. v. To-*

*eppen*, 947 F.Supp. 1227, 1240 (N.D.Ill. 1996).

I join those courts finding that, while use of a trademark as a domain name to extort money from the markholder or to prevent that markholder from using the domain name may be per se dilution, a legitimate competing use of the domain name is not. Holders of a famous mark are not automatically entitled to use that mark as their domain name; trademark law does not support such a monopoly. If another Internet user has an innocent and legitimate reason for using the famous mark as a domain name and is the first to register it, that user should be able to use the domain name, provided that it has not otherwise infringed upon or diluted the trademark. I reject Hasbro's request for a per se dilution rule and instead turn to whether Clue Computing has diluted Hasbro's CLUE ® mark under existing dilution standards. ·

Clue Computing's use of "clue.com" clearly does not fit into the tarnishment category of dilution. A tarnishment claim would require Hasbro to show that Clue Computing is using the mark in an unwholesome manner or for a low quality product which could create a negative association with Hasbro's product. *See Ringling 1*, 955 F.Supp. at 614; *see also, e.g., Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200, 205 (2d Cir.1979) (finding dilution of the Cheerleaders' trademarked uniforms when they were included in a pornographic movie). There is no evidence of tarnishment here. The key question, then, is whether

---

10. I note that Senator Leahy recently joined Senator Hatch and others in introducing legislation entitled the Domain· Name Privacy Prevention Act, S. 1461. This proposed legislation would provide a civil action by the owner of a mark "distinctive at the time of the registration of the domain name" against "[a]ny person who with bad-faith intent to profit from the goodwill of a trademark or service mark of another, registers, traffics in, or uses a domain name that is identical to, confusingly similar to, or dilutive of such trademark or service mark, without regard to the goods or services of the parties." *Id.* at § 3(a) (proposing to amend 15 U.S.C. § 1125 by adding a new subsection (d).) On August 5, 1999, the Senate passed a different bill, the Anticybersquatting Consumer Protection Act, S. 1255, which was amended by Senators Leahy and Hatch to contain almost identical language to that quoted above from S. 1461. *See* 145 Cong. Rec. S10513–02, S10516 (1999).

Clue Computing's use of "clue.com" constitutes blurring.

## 2. Blurring

A charge of dilution by blurring requires a complex case-by-case factual examination. *See Ringling Bros. Barnum & Bailey Combined Shows, Inc. v. B.E. Windows Corp.*, 937 F.Supp. 204, 211 (S.D.N.Y. 1996) (hereinafter *"Ringling 3"*). "Not every use of a similar mark will blur a famous mark.... [T]he human mind has the capacity to recognize the distinctiveness of a multiplicity of concepts, ideas and images without confusion or association." *Ringling 1*, 955 F.Supp. at 614. The basic idea of blurring is that the defendant's use of the plaintiff's mark causes the public no longer to think only of the plaintiff's product upon seeing the famous mark, but rather to associate both the plaintiff and the defendant with the mark. *See id.* at 614–15. "Blurring is one mark seen by customers as now identifying two sources." 3 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 24:90.1 (4th ed.1996). Thus, while actual confusion about the source of the plaintiff's and defendant's products is not required for blurring, something akin to confusion— the mistaken association of both products with the mark—is required.

Judge Sweet, in a widely cited Second Circuit concurring opinion, identified six concrete factors for courts to consider in determining whether the vague concept of 'blurring' applies to a specific case: "(1) similarity of the marks (2) similarity of the products covered by the marks (3) sophistication of consumers (4) predatory intent (5) renown of the senior mark (6) renown of the junior mark." *Mead Data Central, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 875 F.2d 1026, 1035 (2d Cir.1989) (Sweet, J., concurring). Although this list was initially drafted in the context of a state dilution statute, several courts have accepted Judge Sweet's test for determining dilution by blurring under the FTDA. *See, e.g., Ringling 3*, 937 F.Supp. at 211; *Cli-*

*nique Laboratories, Inc. v. DEP Corp.*, 945 F.Supp. 547, 562 (S.D.N.Y.1996).

The First Circuit, however, recently rejected the "Sweet factors," agreeing with commentators that these factors "are the offspring of classical likelihood of confusion analysis and are not particularly relevant or helpful in resolving the issues of dilution by blurring." *Lund*, 163 F.3d at 49 (quoting 3 McCarthy § 24:94.1). More specifically, the First Circuit accepted McCarthy's analysis that four of the factors— intent, similarity of the products, sophistication of customers, and renown of the junior mark—"work directly contrary to the intent of a law whose primary purpose was to apply in cases of widely differing goods, i.e. Kodak pianos and Kodak film." *Id.* (citing 3 McCarthy § 24:94.1). The First Circuit noted McCarthy's conclusion that only two of the factors—the similarity of the marks and the renown of the senior mark—are relevant to dilution analysis. *Id.See also Ringling 2*, 170 F.3d at 464 (The 4th Circuit agreed with the 1st Circuit and commentators that "by and large, the *Mead*-factor analysis simply is not appropriate for assessing a claim under the federal Act.")

The First Circuit concluded, " 'The familiar test of similarity used in the traditional likelihood of confusion test cannot be the guide [for dilution analysis], for likelihood of confusion is not the test of dilution.' ... Instead, the inquiry is into whether target customers are likely to view the products 'as essentially the same.' " *Id.* at 50 (quoting 3 McCarthy § 24:90.1). The First Circuit provided no further analysis of the appropriate dilution standard, concluding that a broad reading of dilution would create constitutional problems under the Patent Clause in the context of a trade dress for a product design, which was at issue in *Lund*, and further concluding that the plaintiff had not shown a likelihood of success on its dilution claim under the standard set out in *Lund*. *Id.* I note, however, that the

First Circuit did assert that "the dilution standard is a rigorous one." *Id.* at 33.

Because the First Circuit in *Lund* undertook to provide only limited guidance regarding what the test for dilution ought to be—as opposed to what the test should not be—I look to McCarthy, upon whom the First Circuit heavily relied. McCarthy states that for blurring, "the marks must be similar enough that a significant segment of the target group sees the two marks as essentially the same." [11] 3 McCarthy § 24:90.1. As noted above, he describes blurring as "one mark seen by customers as now identifying two sources." *Id.* Further, "[t]he plaintiff must prove that the *capacity* of the mark to continue to be strong and famous will be endangered by the defendant's use" even if the defendant's use is too small or minor to actually weaken the plaintiff's mark. *Id.* at § 24:94 (emphasis in original). Finally, McCarthy cautions:

> [T]his is a potent legal tool, which must be carefully used as a scalpel, not a sledgehammer. The dilution doctrine in its 'blurring' mode cannot and should not be carried to the extreme of forbidding the use of every trademark on any and all products and services, however remote from the owner's usage.

*Id.* at § 24:114.

In analyzing Hasbro's dilution claim, I will begin with the two remaining "Sweet factors." [12] First, as to the similarity of the marks, I found above that Clue Computing's domain name is identical to Hasbro's mark, but is somewhat differentiated by surrounding materials upon arriving at the Web page. Second, as to the renown of the senior mark, Hasbro has provided surveys and other evidence showing that its CLUE® mark has gained widespread recognition nationwide. [13] (Riehl Decl. ¶¶ 5–6, 12, Ex. C.) These two factors, then, weigh in favor of a finding of dilution.

However, while the First Circuit said that these two factors remain relevant to dilution analysis, the court did not hold that these two factors were sufficient to establish dilution. *See Lund,* 163 F.3d at 49–50. If courts were compelled to find dilution every time a plaintiff showed that the plaintiff's and defendant's marks were similar and that the plaintiff's mark was famous, several anomalous results would follow. First, in the case of Hasbro's CLUE® trademark, were it found to be famous, every third party with a trademark for the word "clue," (*see* Larson Aff., Ex. 2 to Def.'s Facts, Ex. C), would be engaged in trademark dilution. Indeed, no one other than the mark holder could ever use a trademark similar to one found to be famous. Second, if similarity to a plaintiff's famous mark was sufficient, then I would have to find per se dilution for domain names that use famous marks—a proposition which I have already rejected. These sweeping consequences fly in the face of the First Circuit's assertion of a rigorous standard and McCarthy's call for caution.

Accordingly, I find that more than fulfillment of the two surviving Sweet factors is required to show dilution. The question then is what additional finding is required. The answer appears to reside in the First Circuit's call for "an inquiry into whether target customers are likely to view the

---

11. McCarthy's statement appears more precise than the First Circuit's requirement that consumers see the two *products* as the same.

12. I note that three of the four discredited Sweet factors would counsel against a finding of dilution. Specifically, the products at issue are very different, there is no evidence of predatory intent by Clue Computing, and Clue Computing does not have any appreciable renown, despite Hasbro's argument that its Web site could potentially reach many people.

The fourth discredited factor, the sophistication of the targeted consumers, is ambiguous, but may lean slightly toward a finding of dilution because Hasbro's customers are likely to be of limited sophistication.

13. I note that any mark found to be famous, a prerequisite for protection from dilution, would presumably also have renown, making this factor largely duplicative.

products 'as essentially the same'", *Lund,* 163 F.3d at 50, and in McCarthy's requirement that one mark be "seen by customers as now identifying two sources." 3 McCarthy § 24:90.1. These guidelines seem to require that consumers at least potentially associate the two products with the same mark. The First Circuit, in so requiring, was apparently not referring to a requirement of a likelihood of confusion, although the two concepts sound similar, because the court took great pains to differentiate dilution from infringement. Rather, the requirement appears to be that consumers associate the two different products with the mark even if they are not confused as to the different origins of these products.[14]

After supplementing somewhat the First Circuit's *Lund* legal analysis, I find that Hasbro's evidence fails to establish that consumers will improperly view the two marks as the same. I further find that Hasbro's evidence is not sufficient to show as a matter of law that consumers will see one mark as identifying two sources or will associate both products with Hasbro's mark. Thus, even if Hasbro is able to prove the fame of its mark, it is unable to prevail because it cannot establish that Clue Computing's domain name dilutes that mark.

The analysis here is different from but similar to infringement analysis, in which Clue Computing was found entitled to summary judgment. There, the crucial factor of a lack of actual confusion, which is not part of the blurring analysis, also weighed in Clue Computing's favor. In addition, to be sure, the dissimilarity of the

products, which benefits Clue Computing, takes on much greater significance in infringement analysis because similarity of products can lead to a likelihood of confusion, which is required for infringement but not for blurring. In the infringement analysis, those crucial factors led me to conclude that Hasbro had not proven any genuine issue of material fact that would allow a rational factfinder to find for them on confusion. Parallel findings satisfy me as the factfinder under the FTDA that Hasbro has not demonstrated dilution.

### 3. Equity

Equity is also a relevant consideration for resolution under the FTDA. In describing the cause of action for dilution, the FTDA provides that the owner of a famous mark is entitled to an injunction only "subject to the principles of equity and upon such terms as the court deems reasonable." 15 U.S.C. § 1125. The statute makes equitable considerations a part of the claim itself, rather than merely a consideration affecting the remedy, as Hasbro contends. Indeed, the District Court in *Avery Dennison* included an application of equitable principles as one of the core elements of a dilution claim. *Avery,* 999 F.Supp. at 1339. While I do not, strictly speaking, view such "principles" as core "elements," a distinctive analysis of the principles is appropriate to a full consideration of plaintiff's claim.

Exercising my role as Chancellor and fact finder here, I conclude the equities do not justify an injunction. To be sure, Hasbro is entitled to protection of its mark, and a proliferation of other companies us-

---

14. The Fourth Circuit, in a carefully crafted opinion, recently endorsed a formulation similar to the one I have outlined, but that court went several steps further. The Fourth Circuit established three requirements for dilution, writing that a plaintiff must show "(1) a sufficient similarity between the junior and senior marks to evoke an 'instinctive mental association' of the two by a relevant universe of consumers which (2) is the effective cause of (3) an actual lessening of the senior mark's selling power, expressed as 'its capacity to

identify and distinguish goods or services.'" *Ringling 2,* 170 F.3d at 458. While this standard embodies the rigor that the First Circuit has called for, I will not adopt it wholesale here because the First Circuit in *Lund* made no mention of a requirement of actual lessening of selling power and in fact discredited the district court's requirement that a plaintiff claiming dilution demonstrate a lessening of demand for the plaintiff's product. *Lund,* 163 F.3d at 49.

ing the mark in very public ways may result in a dilution of its uniqueness in exactly the way that Congress hoped to prevent with the FTDA. But I find no calibrated fairness in awarding Hasbro equitable relief through "an anti-dilution injunction granting it a nationwide monopoly in the use of this rather common word" against other companies like Clue Computing legitimately using that word in other contexts. *Viacom Inc. v. Ingram Enterprises, Inc.,* 141 F.3d 886, 890 (8th Cir. 1998). Hasbro has failed to demonstrate equitable considerations sufficient to justify an injunctive judgment against Clue Computing under the FTDA.

### C. State Trademark Dilution Claim

Both parties concede that the standards for dilution under Massachusetts law are very similar to those under the FTDA. Mass. Gen. Laws ch. 110B § 12 states:

Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark registered under this chapter, or a mark valid at common law ... shall be a ground for injunctive relief notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services.

"To prevail under this provision, plaintiff must show that its marks are distinctive, and that defendant's use of similar marks has created the likelihood of dilution." *Black Dog Tavern Co. v. Hall,* 823 F.Supp. 48, 59 (D.Mass.1993). To find distinctiveness, I must find that the mark has acquired secondary meaning or is a strong mark. *See PPG Indus., Inc. v. Clinical Data Inc.,* 620 F.Supp. 604, 606 (D.Mass. 1985); *Pignons S.A. de Mecanique de Precision v. Polaroid Corp.,* 657 F.2d 482, 494 (1st Cir.1981). Since I found above that the mark has secondary meaning, I conclude that it is distinctive for the purpose of the state dilution statute.

■ Under state law, a likelihood of dilution can result from any one of three situations: (1) reduction of the value of the mark caused by actual or potential confusion (2) injury resulting from a use of the mark that tarnishes the reputation associated with the plaintiff's mark; or (3) "diminution in the uniqueness and individuality of the mark." *Infinity Broad. Corp. v. Greater Boston Radio, II, Inc.,* 1993 WL 740936, at \*12 (D.Mass. Sept. 16, 1994); *Black Dog,* 823 F.Supp. at 59. As discussed above, there is no showing of a likelihood of confusion and no tarnishment. The one remaining issue, then, is whether there has been a "diminution in the uniqueness and individuality of the mark," or blurring. *See PPG,* 620 F.Supp. at 608.

■ While courts have generally not examined blurring methodically under the Massachusetts statute, they have looked at factors such as the similarity of the marks and products, the renown of the marks, intent, and the relevant consumers. *See Infinity,* 1993 WL 740936, at \*12; *Black Dog,* 823 F.Supp. at 59; *PPG,* 620 F.Supp. at 608–09. Courts in the past 20 years or so seem to have shown some reluctance to find blurring under Mass. Gen. Laws ch. 110B § 12. *See PPG,* 620 F.Supp. at 608–09; *Pignons,* 657 F.2d at 495; *Infinity,* 1993 WL 740936, at \*12; *Black Dog,* 823 F.Supp. at 59. Given the First Circuit's cautionary language in *Lund* about the dangers of an overly generous definition to the concept of blurring, I will apply the definition of blurring dilution I have applied under the FTDA. *Cf. Avery Dennison Corp. v. Sumpton,* 189 F.3d 868 (9th Cir.1999) (noting that California state dilution statute is interpreted in fashion substantially similar to FTDA). Consequently, for the reasons set forth in my discussion of blurring under the FTDA in Section III.B.2., I find Hasbro has failed to establish dilution under Massachusetts law.

## IV. CONCLUSION

For the reasons set forth above, I hereby:

GRANT defendant's motion for summary judgment as to plaintiff's First Claim, federal trademark infringement; and

Sitting as finder of fact, award judgment for defendant as to plaintiff's Second Claim, federal trademark dilution and Third Claim, state trademark dilution.